**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LATWAHN MCELROY, | ) | Case No.: 1:20-cv-00658-NONE-SAB (PC) |
| Plaintiff, | )<br>) | |
| v. | )<br>) | FINDINGS AND RECOMMENDATIONS RECOMMENDING THIS ACTION BE DISMISSED FOR FAILURE TO COMPLY WITH A COURT ORDER, FAILURE TO PROSECUTE, AND FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF |
| GOMEZ, et al., | )<br>)<br>) | |
| Defendants. | )<br>) | |
| | ) | (ECF Nos. 8, 33) |
| | ) | |

Plaintiff Latwahn McElroy is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**PROCEDURAL BACKGROUND**

This case has a rather lengthy history given Plaintiff's failure to comply and/or respond to the Court's orders.

On June 11, 2020, the Court screened Plaintiff's complaint, found no cognizable claims were stated, and granted Plaintiff thirty days to file an amended complaint.  (ECF No. 8.)

On this same date, Plaintiff filed a motion for appointment of counsel, which was denied, without prejudice on June 12, 2020.  (ECF Nos. 9, 10.)

///

1

On June 15, 2020, Plaintiff filed a motion for a temporary restraining order.  (ECF No. 11.) On June 16, 2020, the Court issued Findings and Recommendations recommending that Plaintiff's motion for a temporary restraining order be denied.  (ECF No. 13.)

On June 17, 2020, Plaintiff filed a motion for appointment of counsel.  (ECF No. 14.)

On June 18, 2020, Plaintiff filed a second motion for a temporary restraining order.  (ECF No. 15.)  On this same date, the Court denied, without prejudice, Plaintiff's motion for appointment of counsel.  (ECF No. 16.)

On June 22, 2020, the Court issued Findings and Recommendations recommending that Plaintiff's second motion for a temporary restraining order be denied.  (ECF No. 17.)

On July 16, 2020, the Court adopted the June 16, 2020 Findings and Recommendations in full, and Plaintiff's first motion for a temporary restraining order was denied.  (ECF No. 19.)

On July 20, 2020, the Court issued an order to show cause why the action should not be dismissed for Plaintiff's failure to file an amended complaint.  (ECF No. 20.)

On July 31, 2020, Plaintiff filed a request for an extension of time to comply with the order to show cause, along with a separate petition for writ of mandamus, request for a preliminary injunction, and request for appointment of counsel.  (ECF Nos. 24, 25.)

On August 4, 2020, the Court discharged the July 20, 2020 order to show cause and granted Plaintiff thirty days to file an amended complaint.  (ECF No. 26.)

On August 12, 2020, the Court issued Findings and Recommendations recommending that Plaintiff's petition for writ of mandamus, request for a preliminary injunction, and request for appointment of counsel be denied.  (ECF No. 27.)

On September 14, 2020, the Court issued another order to show cause why the action should not be dismissed because Plaintiff failed to respond to the Court's screening order.  (ECF No. 30.)

On September 22, 2020, the Court adopted the Findings and Recommendations in full and denied Plaintiff's petition for writ of mandamus, request for preliminary injunction, and request for appointment of counsel.  (ECF No. 31.)

///

///

2

On September 24, 2020, Plaintiff filed a response to the Court's September 14, 2020 order to show cause.  (ECF No. 32.)  In his response, Plaintiff argued that he was in need of appointment of counsel and Defendants should be held liable.  (Id.)

On September 28, 2020, the Court discharged the order to show cause and granted Plaintiff one final opportunity to amend the complaint.  (ECF No. 33.)  Plaintiff was specifically advised that if he wished to proceed with this action, "he must file an **AMENDED COMPLAINT** in compliance with the Court's June 11, 2020 screening order or the action will be dismissed.  Plaintiff's continued effort to stall this action by filing other non-meritorious requests will not be tolerated.  In addition, the Court has previously explained that extraordinary circumstances do not exist for the appointment of counsel. (ECF Nos. 10, 16, 27.)  At this juncture, Plaintiff's only option to proceed with this case is to file an amended complaint, and no further orders to show cause will be issued as the undersigned will issued Findings and Recommendations recommending dismissal of the action."  (Id.)

Plaintiff has failed to respond to the Court's September 28, 2020 order and has not filed an amended complaint.  Accordingly, dismissal of the action is warranted.

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

3

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## COMPLAINT ALLEGATIONS

The bulk of Plaintiff's 34-page complaint is rambling, incoherent and hard to decipher as it is not in chronological order and repeats numerous irrelevant factual allegations. However, the Court will summarize the complaint as best as it can decipher and provide the applicable legal standards.

Plaintiff is a member of the Armstrong/Plata/Coleman class with severe mobility impairment, including nerve damage.  Plaintiff has a medical chrono documenting his single cell status.  Plaintiff attempted to hand the chrono to the UCC members.  However, Defendant officers Morales, Melendes, Gomez, and Doe clinical physician threatened to harass Plaintiff with another prisoner.

Officer Gallardo wrongfully confiscated Plaintiff's battery charger and CD/radio that arrived at North Kern State Prison, which was previously approved at the prior facility.

Officers Morales, Gallegos, Melendes and unidentified others, wrongfully confiscated Plaintiff's legal belongings as well as several personal hygiene items.

On March 24 and 25, 2020, Plaintiff needed assistance and cleaning supplies due to "mishap" of toilet/floor, underwear and towel.  Plaintiff needed the return/refill of bodily necessities, but the floor officers refused to him or exchange the laundry.

On March 28, 2020, Plaintiff collapsed while attempting to walk to the bunk and fell forward bruising his left leg on the foot of the bunk.

On April 3, 2020, Plaintiff suffered another mishap with the floor and had no way to clean and recover from the dingy cell, body and clothing.  Officers Morales and another unknown officer told

4

Plaintiff that they were out of toothpaste, soap and toilet paper, and Plaintiff had to wait a week to get sanitary cell block liquid solution.  Officers Morales, Luna, and several other unknown officers left Plaintiff in cell 102, despite his repeated notification of the necessity for a cell that was ADA compliant.

On April 2 and 3, 2020, Plaintiff had to re-write several court papers and grievances regarding the prison conditions.

On April 6, 2020, Plaintiff was denied access to the law library, and legal actions were delayed for no logical reason.

On April 7, 2020, Plaintiff had another slip and fall in cell 102.

On April 8, 2020, Plaintiff re-appealed the issue of single cell status.

On April 13, 2020, law library access was again denied.

On April 16, 2020, Plaintiff had to (at the order or threat of rejection/cancellation of appeal) separate the classification issue of credit and single cell status.

On April 18-20, 2020, Plaintiff again warned the building officers Chavis, Luna, Morales, and an unknown officer that he could not move around very well and he was suffering medical consequences as a result.  Plaintiff also advised that he and other prisoners were arguing daily, and Plaintiff was suffering mentally and medically.

On April 20-21, 2020, officers watched as Plaintiff had trouble getting off the toilet due to chest pain and a swollen ankle.  Officer Madrid did nothing to assist and merely responded that there was no nurse to call for assistance.

On April 21, 2020, Plaintiff spoke with nurse Robinson who stated that despite the requests made, the clinic physician made no note or response for custody officers about Plaintiff receiving a lay-in or chrono to use a short cut to get meals.  Plaintiff has missed approximately 30 meals altogether.

From April 16 to May 1, 2020, there was cell feeding.

On approximately April 29, 2020, Plaintiff mailed a Form 22 request to the Chief Medical Officer regarding his medical conditions and need for ADA accommodations.

On April 30, 2020, Plaintiff informed officer Luna and other medical providers that he had reoccurring stomach and abdominal pain, lack of balance, chest ache, swollen ankle, congestion and airway constriction, and expressed his need for different medication.  When Plaintiff was returned to his cell, he argued with other inmates because of the noise he was making.

On May 1, 2020, Plaintiff was given bags for his legal belongings and was promised by officers that he would be given a different functional cell.  Later this same day, Plaintiff was taken to the medical department where x-rays were conducted, and Plaintiff had obvious swelling in his ankle.  However, when the clinic physician arrived, he stated "you have no swelling … he doesn't need wheelchair ether … walked out of x-ray room."  The physician discontinued Plaintiff's pain medication and wheelchair.  Plaintiff was subsequently escorted in restraints to the gym holding cage, despite Plaintiff's injuries.

Defendants went overboard in attempting to discourage Plaintiff from the long awaited cell move, and Plaintiff was continued to be celled with another inmate.  Sergeant Melendes told Plaintiff "maybe it's not the other inmates problem maybe it's you."  Plaintiff suffered nightmares, and was continuously threatened with denial of meals and an adequate cell to accommodate his needs.

The medical physician identified as a Doe failed to document and provide care for Plaintiff's swollen ankle, foot disfigurement and hip spasms.

Defendant Warden Santoro had reason to know of the handicap as the officers were ordered to inspect several cells that Plaintiff was assigned to.  It is obvious that when a handicap inmate is denied access to his medical devices injury will occur.

Officers and the appeals coordinators have failed to correct the miscalculation of Plaintiff's classification score which has resulted in the denial of access to certain basic necessitates and programs.  Defendants misfiled a rules violation report

## IV.

## DISCUSSION

### A.     Federal Rules of Civil Procedure 8, 18, and 20

The Court advises Plaintiff of the following requirements under the Federal Rules of Civil Procedure regarding the general formatting of his complaint.  Plaintiff's complaint must contain "a short

and plain statement of the claim showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Federal Rule of Civil Procedure 8(d)(1). A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Federal Rule of Civil Procedure 10(b). "[E]ach claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Federal Rule of Civil Procedure 10(b).

The function of the complaint is not to list every single fact relating to Plaintiff's claims. If Plaintiff wishes to amend his complaint, he must set forth his claims in a simple, concise, and direct manner in order to meet the requirements of Rule 8.

A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." However, unrelated claims that involve different defendants must be brought in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is not only intended to avoid confusion that arises out of bloated lawsuits, but also to ensure that prisoners pay the required filing fees for their lawsuits and prevent prisoners from circumventing the three strikes rule under the Prison Litigation Reform Act. 28 U.S.C. § 1915(g).

The Court advises Plaintiff that each claim that is raised in his complaint must be permitted by either Rule 18 or Rule 20. Plaintiff may state a single claim against a single defendant. Plaintiff may then add any additional claims to his action that are against the same defendant under Rule 18. Fed. R. Civ. P. 18. Plaintiff may also add any additional claims against other defendants if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

Plaintiff brings several different claims against several different prison officials that are unrelated and cannot proceed in one single action. If Plaintiff elects to amend his complaint, Plaintiff must choose which related claims he wishes to pursue in this action. If Plaintiff's amended complaint

sets forth unrelated claims which violate joinder rules, the Court will dismiss the claims it finds to be improperly joined.  In addition, Plaintiff is reminded that he must set forth the factual allegations in a clear and concise fashion.  "The Court is not obligated to endlessly sift through plaintiff's rambling, confusing, repetitive factual allegations in an attempt to construct cognizable claims on plaintiff's behalf. Polk v. Beard, No. EDCV 13-1211-BRO, 2014 WL 4765611, at *5 (C.D. Cal. June 20, 2014), report and recommendation adopted, No. EDCV 13-1211-BRO RNB, 2014 WL 4757503 (C.D. Cal. Sept. 24, 2014), aff'd, No. 14-56884, 2017 WL 2839502 (9th Cir. July 3, 2017). "It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims." Pianka v. Unknown Palmer, 2014 WL 6983337, *2 (D. Ariz. 2014).

### B.     Linkage Requirement under Section 1983

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted).  To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights.  Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### C.     Supervisory Liability

Plaintiff names several Defendants in supervisory positions.  However, in order to proceed against individuals who are supervisor, Plaintiff must demonstrate that he/she personally participated in any underlying alleged violations of Plaintiff's constitutional rights.  That is, Plaintiff must allege facts plausibly showing their "personal involvement in the constitutional deprivation" or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). Plaintiff has not done so here.  Accordingly, Plaintiff fails to state a cognizable claim against any of the

supervisory Defendants.

**D.      Condition of Confinement Claims**

The Eighth Amendment protects prisoners from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2020); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Frost v. Agos, 152 F.3d 1124, 1128 (9th Cir. 1998). "Deliberate indifference describes a state of mind more blameworthy than negligence" but is satisfied by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 at 835.

1.      Double-Celling

Plaintiff contends that being double-celled resulted in cruel and unusual punishment.

In Rhodes v. Chapman, 452 U.S. 337, 348 (1981), the Supreme Court held that double-celling prison inmates is not a violation of the Eighth Amendment.  The inmates in Rhodes filed suit seeking an injunction because "double celling confined cellmates too closely" and caused overcrowding of the prison. Id. at 340. Based on "extensive findings of fact" in the record, the Supreme Court concluded that double celling of inmates did not lead to conditions that violated the Eighth Amendment, such as the unnecessary infliction of pain; a deprivation of "essential food, medical care, or sanitation;" or the creation of "other conditions intolerable for prison confinement." Id. at 348-350.

Here, it appears that Plaintiff contends Defendants placed in a cell with another inmate, despite the fact that he has single cell status. However, Plaintiff fails to set forth specific detailed facts to support his claim that he is entitled to single cell status, and that Defendants denied the request despite knowledge of his status.  Without the necessary factual information, Plaintiff's allegations are not sufficient to indicate the existence of an obvious risk to Plaintiff's safety or to indicate prison officials

9

were aware of a substantial risk to Plaintiff's safety but failed to take reasonable steps to protect him from the risk.

2.  Lack of Meals

Adequate food is a basic human need protected by the Eighth Amendment. See Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998). The Eighth Amendment right to food was clearly established as of at least 2001. Foster v. Runnels, 554 F.3d 807, 815 (9th Cir. 2009).  Denial of food service presents a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. Id. at 812-13; see, e.g., id. at 812 (denial of 16 meals over 23 days was "a sufficiently serious deprivation because food is one of life's basic necessities"); and id. at 812 n. 1 (denial of 2 meals over 9-week period was not sufficiently serious to meet objective prong of Eighth Amendment deliberate indifference).

Prison officials may withhold food service for legitimate penological purposes (e.g., staff safety) but must prove the penological concern justified refusal to feed the prisoner. See Foster, 554 F.3d at 813-14 (guard not entitled to qualified immunity because she did not establish that prisoner's refusal to uncover back window of his cell caused safety issues for food service through food port where front window of cell was uncovered, nor did she establish that uncovering back window was a reasonable condition for the receipt of a meal by a prisoner). See, e.g., Freeman v. Berge, 441 F.3d 543, 546 (7th Cir. 2006) (withholding food from inmate who refused to comply with requirement of putting on pants or shorts was not cruel and unusual punishment).

Plaintiff contends that he missed approximately 33 meals; however, the Court cannot determine based on the factual allegations specifically when, why, or by whom, he was denied access to his meals.  Rather, Plaintiff contends he missed meals stemming from the "severe pain, swelling and inability to function properly every single day/night as a full able body!" (Compl. at 21, ECF No. 1.)  Therefore, it is not clear from the allegations of the complaint that, objectively, plaintiff's deprivation of food was sufficiently serious to form the basis of an Eighth Amendment claim. "The Eighth Amendment 'requires only that prisoners receive food that is adequate to maintain health.' " Mendiola-Martinez v. Arpaio, 836 F.3d 1239, 1259 (9th Cir. 2016) (citing Foster, 554 F.3d at 813 n.2). Further, plaintiff does not set forth factual allegations showing that any specific defendant was

subjectively aware of a serious risk to plaintiff's health and that the defendant deliberately disregarded such risk. See, e.g., Foster, 554 F.3d at 814.

       3.      Lack of Cleaning Supplies and Laundry Exchange

Prisoners have an Eighth Amendment right to be provided with clean clothing and clean linen on a regular basis. Toussaint v. Rushen, 553 F.Supp. 1365, 1379 (N.D. Cal. 1983).  While the Eighth Amendment does not mandate that prisons be comfortable, neither can they be inhumane. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To determine whether a particular deprivation violates the Eighth Amendment, the Court must examine the "circumstances, nature, and duration of [the] deprivation." Johnson v. Lewis, 217 F.3d at 731.  A deprivation of a basic necessity that lasts only a few days may rise to the level of an Eighth Amendment violation; likewise, a more modest deprivation may form the basis of an Eighth Amendment violation if it is especially lengthy or ongoing.  Id. at 731–32. Courts must consider the totality of the conditions of confinement to determine whether a prisoner has been deprived of basic human needs. Rhodes, 452 U.S. at 362–363.  The Ninth Circuit proscribes the subjection of a prisoner to a lack of sanitation that is "severe or prolonged." Andersen v. County of Kern, 45 F.3d 1310, 1315–15 (9th Cir. 1995).

Here, Plaintiff contends in vague fashion that was denied cleaning materials and was not allowed to exchange his laundry.  However, Plaintiff fails specifically link any individual to an affirmative act or omission giving rise to his claim.  In addition, Plaintiff alleges nothing more than the fact that he was not allowed laundry exchange and access to cleaning supplies, but he fails to set forth facts to demonstrate that the lack of such exchange and lack of supplies posed a substantial risk of harm to his health.  Without more facts surrounding the condition and effect of Plaintiff's laundry, the Court cannot determine whether Plaintiff states a plausible deliberate indifference claim.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

    **E.**    **Violation of Prison Regulations**

"[W]hen a violation of state law causes the deprivation of a right protected by the United States Constitution, that violation may form the basis for a Section 1983 action."  Lovell v. Poway Unified School Dist., 90 F.3d 367, 370 (9th Cir. 1996) (citation omitted).  "However, Section 1983 limits a federal court's analysis to the deprivation of rights secured by the federal Constitution and laws," and

"[t]o the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress." Lovell, 90 F.3d at 370-71 (citation and internal quotation marks omitted).  In addition, conduct may violate a written policy without violating the Constitution.  See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (federal due process is not implicated when prison officials fail to comply with state procedural protections that are more generous than those that are constitutionally mandated), overruled on other grounds by Sandin, 515 U.S. at 483-84; Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process, if constitutional minima are nevertheless met.").

Thus, the mere violation of a prison rule or regulation does not necessarily establish a constitutional violation.  Plaintiff has not alleged any facts by which the Court can reasonably infer that the failure to follow a prison regulation violated Plaintiff's constitutional rights.  Accordingly, Plaintiff fails to state a cognizable claim for relief for an alleged violation of a CDCR regulation.

### F.    Inmate Grievance Process

The Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. at 221.  Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  Similarly, Plaintiff may not impose liability on a defendant simply because he or she played a role in processing or responding to Plaintiff's inmate appeals.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (because an administrative appeal process is only a procedural rights, no substantive right is conferred, no due process protections arise, and the "failure to process any of Buckley's grievances, without more, is not actionable under section 1983.").  Therefore, Plaintiff cannot seek liability against any Defendant for his/her involvement in reviewing and denying his inmate appeals.

///

### G.        Deliberate Indifference to Serious Medical Need

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.  A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

Negligence or medical malpractice do not rise to the level of deliberate indifference. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-106).  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff fails to state a cognizable claim for deliberate indifference.  Although Plaintiff contends that he stomach and abdominal pain, lack of balance, chest ache, swollen ankle, and congestion and airway constriction, Plaintiff has failed to demonstrate an objectively serious medical need.  Second, Plaintiff acknowledges that he was examined by medical professionals, but simply was

not provided the pain medication or medical devices that he desired.  Indeed, Plaintiff's allegations demonstrate that he was provided an x-ray and the physician found no swelling or deformity. However, Plaintiff fails to demonstrate that he had a serious injuries warranting medical treatment or that any prison official disregarded an excessive risk to his health and safety.  Plaintiff's mere disagreement with the medical professionals diagnosis and medication/accommodation recommendations does not give rise to a claim for deliberate indifference.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### H.    Conspiracy

A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.  Gilbrook v. City of Westminster, 177 F.3d 839, 856 (9th Cir. 1999).

"Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." Lacey v. Maricopa Cty., 693 F.3d 896, 935 (9th Cir. 2012) (en banc).  For a section 1983 conspiracy claim, "an agreement or meeting of minds to violate [the plaintiff's] constitutional rights must be shown." Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).

Plaintiff's conspiracy claim, if any, lacks specificity. Plaintiff's suggestion of conspiracy is speculative as he presents no facts to show a meeting of the minds to violate his constitutional rights. Critically, and for the reasons stated below, Plaintiff's complaint does not establish an underlying constitutional claim to support any assertion of a conspiracy among the Defendants.

### I.    Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."  Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To

14

state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  In addition, threats do not rise to the level of a constitutional violation.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Here, although Plaintiff contends that he was subjected to retaliation, he fails to demonstrate that any action or omission by any Defendant was because of the exercise of a constitutional rights. Accordingly, Plaintiff fails to state a cognizable claim for retaliation.

### J.    False Rules Violation Report

Prisoners do not have a liberty interest in being free from false accusations of misconduct. This means that the falsification of a report, even when intentional, does not alone give rise to a claim under § 1983. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (stating that "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports[ ]").

However, there are two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right; and (2) when the prisoner alleges that they were not afforded procedural due process in a proceeding concerning a false report. See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) (discussing retaliation claim against a correctional officer based upon the correctional officer's false accusations of violating a prison rule); Freeman, 808 F.2d at 951 (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) (same).

Here, Plaintiff alleges that Defendant Sergeant D. Bjork issued a false Rules Violation Report. However, Plaintiff has not alleged any facts demonstrating that the false reports were filed in

retaliation for his exercise of a constitutional right. Further, Plaintiff has failed to allege facts sufficient to establish that he was not provided the procedural due process protections set forth in Wolff during the resulting disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 564–71 (1974) ("Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken.") Therefore, Plaintiff has failed to state a cognizable claim for violation of his due process or any other constitutional rights based on any false reports or issuance of a Rules Violation Report.

### K.    Classification Score

Plaintiff contends that Defendants have improperly reduced his classification score which has caused lack of access to basic necessitates and programming.

An inmate's classification score determines inmate placement unless a specific administrative determinant, e.g. conviction for arson or sex crimes or disciplinary problems, is affixed, see Cal. Code Regs. tit. 15, §§ 3375.1(a), 3375.2, or the inmate is transferred to a sub-facility, id. § 3375.1(b). The regulations contain no substantive predicates or mandatory language with respect to administrative determinants: they "may be imposed by departmental officials." Id. § 3375.2(b).

It cannot be said, then, that an inmate with a specific classification score "can reasonably form an objective expectation" that he will be placed in a facility which corresponds with his classification score. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 464-65 (1989) (finding no protected liberty interest in Kentucky regulations); Myron v. Terhune, 476 F.3d 716, 719 (9th Cir. 2007) (finding that although California regulations pertaining to security classification contained some mandatory language, they did not eliminate all discretion of prison officials, mandate a particular outcome, or impose an atypical and significant hardship on the inmate population and therefore the regulations do not give rise to a Fourteenth Amendment liberty interest). Because the statutory language does not meet the first prong of the Sandin test, no protected liberty interest requiring constitutional protection is created.

### L.    Denial of Access to the Courts

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588

F.3d 652, 655 (9th Cir. 2009).  However, to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348) (internal quotation marks omitted); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.  The failure to allege an actual injury is "fatal."  Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (citing Lewis, 518 U.S. at 353 & n.4).  In addition, Plaintiff must allege the loss of a "non-frivolous" or "arguable" underlying claim.  Harbury, 536 U.S. at 413-14.  The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued."  Id. at 417.  Finally, Plaintiff must specifically allege the "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."  Id. at 415.

Although Plaintiff contends in conclusory fashion that he been denied access to legal materials and the law library, he fails to demonstrate actual injury in relation to any pending case.  Accordingly, Plaintiff fails to state a cognizable claim for denial of access to the courts.

### M.      Confiscation of Legal Property

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  Authorized, intentional deprivations of property are actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), but the Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections," Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Vance v. Barrett, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted). The Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

17

1    Here, Plaintiff indicates that his battery charger and CD/radio were wrongfully confiscated.

2    Such claim is unauthorized deprivation, which is not cognizable under § 1983.  Plaintiff's property

3    claim may be actionable under state law, but such a claim must be brought in state court rather than in

4    federal court. Indeed, Plaintiff has an adequate post-deprivation remedy under California law and

5    therefore, he may not pursue a due process claim arising out of the unlawful confiscation of his

6    personal property. <u>Barnett</u>, 31 F.3d at 816-17 (citing Cal. Gov't Code §§ 810-895). Accordingly,

7    Plaintiff fails to state a cognizable due process claim.

8    **N.     Americans with Disabilities Act and Rehabilitation Act**

9    Title II of the ADA and section 504 of the RA prohibit discrimination on the basis of disability."

10   <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual

11   with a disability shall, by reason of such disability, be excluded from participation in or be denied the

12   benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such

13   entity." 42 U.S.C. § 12132.  Similarly, the RA provides that "[n]o otherwise qualified individual with a

14   disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the

15   participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

16   receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).  Title II of the ADA applies to inmates

17   within state prisons.  <u>Pennsylvania Dept. of Corrections v. Yeskey</u>, 118 S. Ct. 1952, 1955 (1998);

18   <u>Simmons v. Navajo County, Arizona</u>, 609 F.3d 1011, 1021 (9th Cir. 2010).

19   "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified

20   individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against

21   with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination

22   was by reason of [his] disability." <u>Lovell</u>, 303 F.3d at 1052; <u>accord</u> <u>Martin v. California Dept. of Veterans</u>

23   <u>Affairs</u>, 560 F.3d 1042, 1047 (9th Cir. 2009).  "To establish a violation of § 504 of the RA, a plaintiff

24   must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for

25   the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his]

26   handicap; and (4) the program providing the benefit or services receives federal financial assistance."

27   <u>Lovell</u>, 303 F.3d at 1052.  As there is no significant difference in the analysis of rights and obligations

28   under the two Acts, <u>Miller v. Monroe Sch. Dist.</u>, 159 F.Supp.3d 1238, 1249 (W.D. Wash. 2016), the Court

analyzes the claims together.

Here, even assuming Plaintiff suffers a disability as defined by the ADA, Plaintiff has failed to state a claim under the ADA or the RA because it is clear from the complaint that he is not being denied participation in any programming due to any disability.   Accordingly. Plaintiff has failed to state a cognizable claim for violation of the ADA or RA.

**O.     Deliberate Indifference to Safety**

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833; Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners) (citations omitted)).

It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.  Farmer, 511 U.S. at 834-35 (citations omitted).

A prisoner can state a § 1983 claim under the Eighth Amendment based on deliberate indifference or reckless disregard to a threat of serious harm by another inmate. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) ("A prisoner may state a section 1983 claim under the eighth and fourteenth amendments against prison officials when those officials acted with 'deliberate indifference' or 'reckless disregard' to the threat of serious harm caused by another prisoner."). However, "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996).

1   Further, one inmate's threat against another inmate will not serve to impute actual knowledge of a

2   substantial risk of harm where neither inmate has a prior history of violence. Id.; see also Perkins v.

3   Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998) (no notice of the risk that an inmate would sexually

4   assault another where they had previously been housed together without incident); Lucas v. Eagleton,

5   2007 WL 2457571 at *9 (D. S.C. 2007) (a prison official's witnessing of an argument between two

6   inmates did not put the official on notice of a risk of harm absent evidence of a propensity of violence

7   or a "history of animosity").

8         Here, to the extent Plaintiff contends that he was threatened by other inmates and reported such

9   incidents to prison officials, such allegations are insufficient to state a cognizable Eighth Amendment

10  claim for deliberate indifference or reckless disregard to a threat of serious harm by another inmate.

11  See Prater, 89 F.3d at 541 (threats alone are insufficient to impute actual knowledge of substantial risk

12  of harm).  Accordingly, Plaintiff fails to state a cognizable claim for deliberate indifference to his

13  personal safety.

**V.**

**FAILURE TO OBEY COURT ORDER AND FAILURE TO PROSECUTE**

16        Here, the Court screened Plaintiff's complaint, and on June 11, 2020, an order issued providing

17  Plaintiff with the legal standards that applied to his claims, advising him of the deficiencies that

18  needed to be corrected, and granting him leave to file an amended complaint within thirty days.  (ECF

19  No. 8.)  As explained above in section I, Plaintiff has repeatedly failed to respond and/or comply with

20  the Court's orders.  (ECF Nos. 20, 30.)  In the Court's last September 28, 2020 order, Plaintiff was

21  specifically advised that "he must file an **AMENDED COMPLAINT** in compliance with the Court's

22  June 11, 2020 screening order or the action will be dismissed[,]" and no further orders to show cause

23  will be issued as the undersigned will issued Findings and Recommendations recommending dismissal

24  of the action."  (ECF No. 33 at 3.)

25        Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or

26  with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

27  within the inherent power of the Court."  The Court has the inherent power to control its docket and

28  may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the

1   action.  Bautista v. Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000).

2       A court may dismiss an action based on a party's failure to prosecute an action, failure to obey

3   a court order, or failure to comply with local rules.  See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th

4   Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61

5   (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v.

6   King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring

7   pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128,

8   130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d

9   1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

10      "In determining whether to dismiss an action for lack of prosecution, the district court is required

11  to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's

12  need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring

13  disposition of cases on their merits; and (5) the availability of less drastic sanctions.' "  Carey, 856 F.2d

14  at 1440 (quoting Henderson, 779 F.2d at 1423).  These factors guide a court in deciding what to do, and

15  are not conditions that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA)

16  Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

17      In this instance, the public's interest in expeditious resolution of the litigation and the Court's

18  need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine (PPA) Products

19  Liability Litigation, 460 F.3d at 1226.  Plaintiff was initially ordered to file an amended complaint within

20  thirty days of June 11, 2020 and has not done so.  Accordingly, the operative pleading is the May 11,

21  2020 complaint which has been found not to state a cognizable claim.  Plaintiff's failure to comply with

22  the order of the Court by filing an amended complaint hinders the Court's ability to move this action

23  towards disposition.  This action can proceed no further without Plaintiff's compliance with the order

24  and his failure to comply indicates that Plaintiff does not intend to diligently litigate this action.

25      Since it appears that Plaintiff does not intend to litigate this action diligently there arises a

26  rebuttable presumption of prejudice to the defendants in this action.  In re Eisen, 31 F.3d 1447, 1452-53

27  (9th Cir. 1994).  The risk of prejudice to the defendants also weighs in favor of dismissal.

28      The public policy in favor of deciding cases on their merits is greatly outweighed by the factors

in favor of dismissal.  It is Plaintiff's responsibility to move this action forward.  In order for this action to proceed, Plaintiff is required to file an amended complaint curing the deficiencies in the operative pleading.  Despite being ordered to do so, Plaintiff did not file an amended complaint or respond to the Court's order and this action cannot simply remain idle on the Court's docket, unprosecuted.  In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

Finally, a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement.  Ferdik, 963 F.2d at 1262; Malone, 833 F.2d at 132-33; Henderson, 779 F.2d at 1424.  The Court's September 28, 20202 order requiring Plaintiff to file an amended complaint expressly stated dismissal would result for his failure to comply with the court's order.  (ECF No. 33.)  Thus, Plaintiff had adequate warning that dismissal would result from his noncompliance with the Court's order.

## VI.

## CONCLUSION AND RECOMMENDATION

The Court has screened Plaintiff's complaint and found that it fails to state a cognizable claim. Plaintiff has failed to comply with the Court's order to file an amended complaint.  In considering the factors to determine if this action should be dismissed, the Court finds that this action should be dismissed for Plaintiff's failure to state a cognizable claim, failure to obey the September 28, 2020 order, and failure to prosecute this action.

Accordingly, IT IS HEREBY RECOMMENDED that this action be DISMISSED for Plaintiff's failure to state a claim, failure to comply with a court order, and failure to prosecute.

This Findings and Recommendation is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen **(14) days** of service of this Recommendation, Plaintiff may file written objections to this findings and recommendation with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The district judge will review the magistrate judge's Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394

(9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 9, 2020**

UNITED STATES MAGISTRATE JUDGE

23